UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

THIS DOCUMENT APPLIES TO ALL WORLD
TRADE CENTER DISASTER SITE LITIGATION

21 MC 102 (AKH)
(all actions identified in Table
attached to Movant's Notice of
Motion)

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS TULLY
CONTRUCTION CO. INC. AND TULLY INDUSTRIES, INC.'S MOTION TO
TRANSFER AND/OR STAY**

Marc Jay Bern
Denise A. Rubin
W. Steven Berman
Christopher R. LoPalo
WORBY GRONER & NAPOLI BERN, LLP
*Attorneys for Plaintiffs*
115 Broadway, 12th Floor
New York, New York  10006
(212) 267-3700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

THIS DOCUMENT APPLIES TO ALL WORLD
TRADE CENTER DISASTER SITE LITIGATION

21 MC 102 (AKH)
(all actions identified in Table
attached to Movant's Notice of
Motion)

**DECLARATION OF
CHRISTOPHER LOPALO**

CHRISTOPHER R. LOPALO, an attorney duly licensed to practice before the Courts of

the State of New York and admitted to practice before this Honorable Court, hereby declares

under penalty of perjury:

1.      I am an attorney duly licensed to practice in the Courts of the State of New York

and a member of the bar of this Honorable Court.

2.      I am an associate of the law firm Worby Groner & Napoli Bern, LLP, counsel for

certain plaintiffs in *In re: WORLD TRADE CENTER DISASTER SITE LITIGATION* (21 MC 100

[AKH]); *In Re: WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE*

*LITIGATION* (21 MC 102 [AKH]; and *In Re: COMBINED WORLD TRADE CENTER AND*

*LOWER MANHATTAN DISASTER SITE LITIGATION* (straddler plaintiffs) (21 MC 103

[AKH]).

3.      I represent the one hundred plaintiffs involved in the motion to transfer and/or stay filed by Defendants Tully Construction Co. Inc. and Tully Industries, Inc. (hereinafter referred to as "Tully").[1]

4.      This Declaration and its supporting papers are respectfully offered in opposition to Tully's motion to transfer and/or stay certain cases.

5.      The 100 cases involved in this motion should not be transferred to the 21 MC 100 Master Docket from the 21 MC 102 Master Docket, because these Plaintiffs did not remove debris on or beneath the footprints of the World Trade Center Site.  To the contrary,  the Plaintiffs at issue worked both in the Deutsche Bank Building and in other privately owned buildings throughout lower Manhattan – not on solely on "the pile."  By definition, these Plaintiffs do not belong in the 21 MC 100 litigation.

6.      Attached to these papers as Exhibit "1" is a list of the 100 cases involved in this motion that includes, in part, locations worked, dates worked, and the date the 21 MC 102 Check Off Complaint Filed.[2]

7.      The Defendant's submission is misleading where it indicates that the affected Plaintiffs worked only at the Deutsche Bank Building.  This is not fully and accurately advising the Court as to the Plaintiffs' other privately owned work locations, that are not on the pile, all of which satisfy the Court's criteria for these Plaintiffs to be included in the 21 MC 102 Master Docket.

---

[1] Tully's Exhibit B lists only 100 cases.  21 MC 102 Check-Off Complaints were also filed for the following nine cases where the Plaintiff worked in the Deutsche Bank Building: Betsy Arruda 06cv13787; Angel Cobos 07cv1483; Zoila Cortez 07cv05344; Rodolofo Guevara 06cv3301; Antoni Konopka and Alina Konopka 07cv1641; Angel Naranjo and Blanca Naranjo 07cv066; Zoila Postuizaca and Luis F. Pastuizaca 07cv05308; Maria Puma 07cv1688; Carlos Riera 07cv1518.

[2] Exhibit "1" also includes the nine cases mentioned in footnote 1.

8.      As can be seen in Exhibit "1," 21 MC 102 Check-Off Complaints were filed for each of these Plaintiffs in the spring of 2007 pursuant to this Court's Case Management Orders.

9.      Further, the majority of the defendants in these Plaintiffs' 21 MC 102 Check-Off Complaints are not defendants in the 21 MC 100 Master complaint.  Accordingly, there is no basis to transfer these cases to the 21 MC 100 Master Docket.

10.     The transfer issue now raised by Tully in the present matters was previously raised by letter in *Zablocki v. Tully, et al.*, 21 MC 100, 06-CV-15494 (AKH).  In *Zablocki*, Plaintiff sought to be transferred from the stayed 100 docket to the 102 docket.  By Order dated April 13, 2007, this Court denied the transfer request because: (1) *Zablocki* worked only at the Deutsche Bank Building, (2) was at the time docketed in 21 MC 100 and (3) the 21 MC 100 Master Docket was stayed by Order of the Second Circuit.

11.     It is respectfully submitted that cases cannot be transferred into the 21 MC 100 Master Docket for the same reason that cases cannot be transferred out of the 21 MC 100 Master Docket:  the stay of the 21 MC 100 Master Docket imposed by the Second Circuit, was in part, at Tully's request.

12.     Unlike *Zablocki*, the Plaintiffs now at issue all filed 21 MC 102 Check Off Complaints.

13.     Tully is also judicially estopped from now arguing a different position then previously argued in their Motion for Stay in the Court of Appeals for the Second Circuit, merely because it serves their purposes to do so.  Tully previously argued both before this Court prior to their Second Circuit motion filing and to the Second Circuit that this Court was divested of jurisdiction over the 21 MC 100 Master Docket upon the filing of Tully's notice of appeal. *See*, Motion for Stay, ¶ 6, which is attached hereto as Exhibit "2."

3

14.    The Second Circuit Court of Appeals subsequently issued an Order on March 9, 2007, granting Tully's requested relief by staying all pre-trial proceedings. *See,* Order of March 9, 2007, Movant's Exhibit "C."

15.    Contrary to Tully's previous argument that this Court is divested of jurisdiction over the 21 MC 100 Master Docket, they now argue that this Court has the jurisdiction to transfer cases into the 21 MC 100 Master Docket, effectively enlarging the scope and number of cases now on appeal before the Second Circuit.  Tully cannot have it both ways, arguing that this Court is divested of jurisdiction when its suits their purposes and that the Court is not so divested when it does not.

16.    Oral Argument of Tully's pending interlocutory appeals, which this Court previously characterized as bordering "on frivolous, if not frivolous," (*see* 1/8/07 Order, at page 6, which is attached hereto as Exhibit "3"), is scheduled before the Second Circuit on October 1, 2007.

17.    This Court's Case Management Order 4 of June 29, 2007, expressly requires the parties in 21 MC 102 to proceed with discovery, providing at Section K, paragraph 3(a) that: "Discovery is not stayed, and may commence at any time consistent with the Federal Rules of Civil Procedure."

18.    Since Tully is a defendant in the 21 MC 102 Master Complaint, they are required to go forward with discovery.  Any attempt to transfer cases into the 100 Docket and/or stay pending discovery in the 102 cases amounts to nothing more than another attempt by Defendants to undermine and circumvent this Court's ability to manage the cases on its docket, as well as further impede the exchange of vital and basic discovery, such as accurate and complete insurance information, that is part and parcel of every federal civil case.

19.     Indeed, Tully had failed to comply with either Case Management Order 4 in the 102 litigation by serving and filing Answers to the Master Complaint by Friday, August 3, 2007, or the Court's admonition at the June 15, 2007 conference that the filing of a motion does not obviate the need by Defendants to file and serve responsive pleadings:

> THE COURT:        As far as I am concerned, yes….a motion is not and does not function as a stay.

Id., (June 15, 2007 transcript pp: 26-28, which is attached hereto as Exhibit 4).   Nevertheless, Tully filed its Motion to Transfer and/or Stay in lieu of the pleadings that they were ordered to file by August 3, 2007, attempting to cause further delay even if their motion is denied.

20.     Similarly, Tully, by and through its counsel, specifically requested 45 days from the June 15, 2007, conference to comply with the Court's directive that it supply Plaintiffs with basic insurance coverage information.  The Court graciously exceeded the requested time and gave Defendants, including Tully, until August 10, 2007, to produce their coverage information. (*See* T. 34).  Again, Tully failed to meet a deadline imposed by this Court by refusing to serve the minimally required insurance information, resulting in additional delay.

21.     This Court has repeatedly and eloquently recognized the effect of litigation delay upon the heroes of the 9/11 disaster, such as the Plaintiffs in the above-captioned matters, who selflessly toiled to remediate the damage inflicted by the terrorists and who, in so doing, were injured by their needless exposure to toxins.

22.     In its October 17, 2006, denial of motions to dismiss and for summary judgment in the 21 MC 100 litigation, this Court expressly recognized the important public purpose of swift and fair compensation to those Plaintiffs who could prove that their injuries were caused by the 9/11 disaster.

23.     In its Summary Order of November 27, 2006, this Court provisionally denied certain Defendants' motion to stay the 100 litigation, finding that there was an "intense public interest in speadily moving this case towards resolution…There will be no adjournment of proceedings… ."

24.     In its Order of January 8, 2007, this Court confirmed its previous refusal to stay proceedings, finding that "substantial delay is a likely consequence of interlocutory appeal at this stage of the litigation.  Such a delay would be unconscionable, given the intense public interest in reaching an expeditious resolution to this litigation."  *See* Exhibit 3 at 16.

25.     The same purported public interest arguments rejected by this Court in its January 8, 2007, Order have been resurrected by Defendant Tully in support of its pending Motion to Stay.  The same unconscionable delay resulting from such a stay equally compels, once again, the rejection of the relief now sought by Defendant Tully.


Dated:  New York, New York
          August 16, 2007



                              Christopher R. LoPalo (CL-6466)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

(all actions identified in Table attached
to Movant's Notice of Motion)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS TULLY CONSTRUCTION CO. INC.
AND TULLY INDUSTRIES, INC.'S MOTION TO
TRANSFER AND/OR STAY**

### STATEMENT OF FACTS

Defendants Tully Construction Co. Inc. and Tully Industries, Inc's (hereinafter referred to as "Tully") motion to transfer is based upon two incorrect premises: First, that the Plaintiffs against whom Tully seeks its requested relief worked *only* at the Deutsche Bank Building site instead of, in fact, *in* the Deutsche Bank Building and many other privately owned buildings where they toiled; second, that the stay imposed by the Second Circuit at the request of Tully and other defendants does not impede the district court's ability to enlarge or reduce the docket of cases pending before the Second Circuit. Both premises are wrong and merely serve Tully's ulterior motive of further delaying this litigation.

As this Court is well aware, all pre-trial proceedings in the 21 MC 100 Master Docket are stayed pursuant to an Order entered on March 9, 2007, by the United States Court of Appeals for the Second Circuit pending its determination of the interlocutory appeal, in which oral argument is scheduled for October 1, 2007. *See* Declaration of Christopher LoPalo, at ¶14. This Court previously ruled that it could not transfer the *Zablocki* case from the 21 MC 100 docket to the 21

MC 102 docket, in part, because of the stay imposed by the Second Circuit. *See* Declaration of Christopher LoPalo, ¶¶10-12.  This Court created both the 21 MC 102 and 21 MC 103 dockets and required the Plaintiffs to file new Complaints.  Further, Defendant Tully argued that the district court was divested of jurisdiction over the 21 MC 100 docket by virtue of the Notice of Appeal file with the Second Circuit.  The resulting stay of all proceedings in the 21 MC 100 issued by the Second Circuit precludes Tully from now arguing a contrary position merely because it seeks a litigation advantage in so doing.  This fast and loose conduct is eschewed by the doctrine of judicial estoppel, as set forth, below.

The Plaintiffs involved in Tully's pending motion do not belong in the 21 MC 100 Master Docket because these Plaintiffs worked at privately owned and controlled sites and buildings, not on "the pile." Id., at ¶¶5-12.  Indeed, most of the Defendants in the pending 21 MC 102 actions are not even parties in the 21 MC 100 Master Complaint.  Id.  Indeed, this Court *explicitly* and intentionally distinguished the 21 MC 100 litigation from the 21 MC 102 litigation. The Plaintiffs at issue do not belong in the 21 MC 100 litigation because of the nature of these Plaintiffs' work. Tully's request to transfer the Plaintiffs at issue to the 21 MC 100 Master Docket, by effect or design, simply undermines this Court's considered management of the cases before it.

Additionally, these Plaintiffs' claims against Tully should not be stayed.  This Court has already ruled that discovery in the 21 MC 102 Master Docket is not stayed.  Id. at ¶15.  Instead, this Court expressly Ordered Tully and the other Defendants to file and serve its responsive pleadings to the 102 Complaint by August 3, 2007.  Id. at ¶17.  Tully and the other defendants were also Ordered to produce certain minimal but crucial insurance information by August 10, 2007, but, once again, Tully failed to do so.  Id. at ¶18.

Instead, again contravening this Court's instructions at the June 15, 2007 conference, (Id., at ¶17), Tully filed the within Motion in lieu of either required pleadings or discovery.   Rather than enter any transferor stay order, it is respectfully submitted that Tully should be compelled to immediately comply with this Court's prior case management orders.

**ARGUMENT**

**A.    Cases Cannot Be Transferred From Their Current
Active Docket To A Stayed Docket**

This Court saw fit to organize the World Center litigation cases before it into separate dockets.  On August 9, 2005, this Court entered an Order in 21 MC 100 that directed, in part, that

> [c]ases brought by plaintiffs – such as clean-up personnel –alleging personal injury primarily based on circumstances and conduct in the period after the September 11, 2002 attacks, and based on conduct that occurred outside the [CMO 3 "World Trade Center Site" definition] would be designated under 21 MC 102.

Separate short-form Complaints and a new Master Long-Form Complaint were filed in June, 2007 to establish this separate docket, as required by this Court's Case Management Order No. 3 in 21 MC 102 of March 21, 2007, on behalf of all Plaintiffs who are the subject of Tully's pending Motion.

On March 28, 2007, this Court entered Case Management Order No. 1 in newly created Master Docket 21 MC 103.  By that Order docket 21 MC 103 was established for plaintiffs claiming injury as a result of work performed both on "the pile" at the World Trade Center Site as well as at other privately owned sites.  These claims are denoted as "straggler" because they straggle claims in both the 21 MC 100 and 21 MC 102 dockets.  The Plaintiffs who are the subject of Tully's pending motion were properly filed in the 21 MC 102 docket, based upon the Court's broad criteria.

3

The Plaintiffs at issue are "clean-up personnel" who did not toil only on the pile but in privately owned buildings: exactly the class of claimants for whom the 21 MC 102 docket was created.  Tully's Motion to Transfer and/or Stay is not based upon any contravening facts of record.  Rather, Tully's motion is based upon their counsels' unsupported conclusion that when these Plaintiffs worked at the Deutsche Bank Building, they did so under Tully's sole and exclusive direction while Tully was controlled or directed by the City of New York.  These claims have not been adequately addressed in the prior discovery in 21 MC 100 directed to immunity issues and they await factual development through discovery in the above-captioned matter.  Tully's foot dragging, if not outright hostility, to this or any required discovery precludes any effective fact finding required for their requested relief at this time.

Tully's primary argument is that all of the cases it seeks to transfer involve the former Deutsche Bank Building at 130 Liberty Street, which is technically and geographically defined as part of the "World Trade Center Site" under Case Management Order No. 3 in 21 MC 100. Similar to the argument made by Defendant Verizon in its pending motion, Tully argues that these cases should somehow be administratively designated to 21 MC 100.  However, this argument is based upon a flawed analysis of the aforesaid Orders that this Court expressly rejected at the June 15, 2007 conference.  This Court has made it abundantly clear that the "World Trade Center Site" definition, adopted during the early stages of this litigation, was not to be used for any purpose other than construing the provisions of CMO 3, and should not be read in a manner that would affect any of the parties' substantive rights. Indeed, this Court acknowledged that the definition upon which Tully's argument is now based "interfere[s] with clear analysis, because the definition of 100 is too broad."  *See* Exhibit 4, at pp. 26-28.  Yet,

Tully's arguments are based upon that faulty technical definition that, standing alone, warrants the denial of its pending motion.

Tully also fails to explain exactly how this Court currently has the jurisdiction to transfer anything into or out of the 21 MC 100 docket in the face of the Stay imposed by the Second Circuit.  In Motorola Credit Corp. v. Uzan, 388 F.3d 39 (2d Cir. 2004), the Second Circuit held that "a district court therefore has jurisdiction to proceed with a case *absent a stay* from this Court." Id., at 54 (emphasis added).  It follows that once the Second Circuit issues a stay, as it has in the instant matters, this Court is divested of jurisdiction to proceed with case transfers in or out of the 100 docket.  Any other interpretation would effectively permit this or any district court to effectively control the cases pending upon the Appellate docket at any given time.

Further, Tully previously argued both before this Court and before the Second Circuit that this Court was automatically divested of jurisdiction over the 21 MC 100 docket merely by Tully's filing of its Notice of Appeal.[1]  Regardless of this argument's lack of merit, Tully successfully relied upon it in convincing the Second Circuit to impose the aforesaid stay.  Now, however, Tully takes a contradictory position when it perceives it to be in its interest to do so by arguing that this Court is not divested of jurisdiction to transfer cases in and out of the 100 docket.

It is precisely to avoid such circumstances that the doctrine of judicial estoppel exists. To invoke the doctrine, "the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding and the prior inconsistent position must have been adopted by the court in some manner." *Bates v. Long Island Railroad Co*., 997 F.2d 1028, 1038 (2nd Cir. 1993) *cert. denied,* 510 U.S. 992 (1993).  The two purposes of the doctrine are " to

---

[1] Both this Court and the Plaintiffs rejected this argument, which Plaintiffs continue to reject.

preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions" and "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Id. Or, as the Court has more succinctly stated, "to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight v. BankAmerica Corp.,* 219 F.3d 79, 89 (2nd Cir. 2000). That is precisely why the position and relief now sought by Tully must now be rejected. These cases should not and cannot be transferred into 21 MC 100.

### B.  These Cases Are Not And Should Not Be Stayed.

Tully argues that the 21 MC 102 litigation against it must be stayed to permit it to receive the benefits of immunity that it claims it is entitled to in the 21 MC 100 cases. Tully's argument obviously assumes its conclusion. First, this Court has previously held that Tully's pending appeals border "on frivolous, if not [are] frivolous." *See*, Declaration of Christopher LoPalo, attached hereto, at ¶14.

Second, Tully's claimed "burden" is illusory, at best. Tully does not claim that it will incur any uncompensated or non-reimbursed financial expense in meeting any discovery demands or Orders. Even if, *arguendo*, Tully does experience some sort of burden by actively litigating the claims at issue, Plaintiffs submit that it would be minimal and that it would pale in comparison to the resulting burden imposed upon the Plaintiffs should Tully's requested stay be granted.

This Court has repeatedly found that there is an "intense public interest in speedily moving this case towards resolution…" Id., at ¶¶ 19-23. Indeed, in its January 8, 2007 Order, this Court refused the City's request to stay proceedings in the 100 litigation pending appeal, finding that "substantial delay is a likely consequence of interlocutory appeal at this stage of the

litigation.  Such a delay would be unconscionable, given the intense public interest in reaching an expeditious resolution to this litigation." <u>Id</u>., at ¶ 22.

The same public interest arguments proffered by the City and rejected by this Court in its January 8, 2007, Order have been resurrected by Defendant Tully in support of its pending Motion to Stay.  The same unconscionable delay resulting from such a stay equally compels, once again, the rejection of the relief sought by Defendant Tully.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs respectfully request that this Court deny Tully's motion to transfer and/or stay .


Dated:  New York, New York
        August 16, 2007


                                    Respectfully submitted,


                                    _____
                                    Christopher R. LoPalo (CL-6466)

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

21 MC 102 (AKH)
(all actions identified in Table
attached to Movant's Notice of
Motion)

**DECLARATION OF SERVICE**

Christopher R. LoPalo, an attorney duly licensed to practice before the Courts of the State

of New York, hereby declares that on August 16, 2007, I served the within **PLAINTIFFS'**

**RESPONSE IN OPPOSITION TO DEFENDANTS TULLY CONSTRUCTION CO. INC.**

**AND TULLY INDUSTRIES, INC'S MOTION TO TRANSFER AND/OR STAY** upon the

persons listed below by the Court's Electronic Filing system and by electronic mail:

*__Defendants' Liaison Counsel & Counsel for Tully Defendants__*
James Tyrrell, Esq.:          JTyrrell@PattonBoggs.com
Joseph Hopkins, Esq.:         Jhopkins@PattonBoggs.com
Richard Williamson, Esq.:     Rwilliamson@fzw.com
Thomas Egan, Esq.:            Tegan@fzw.com
Brad Stein, Esq.:             Bstein@fzw.com

*__Plaintiffs' Liaison Counsel__*
Robert Grochow, Esq.:         Rgrochow@aol.com
Gregory, Cannato Esq.:        Cannata@cannatalaw.com

_____
Christopher R. LoPalo (CL-6466)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

21 MC 102 (AKH)
(all actions identified in
Table attached to Movant's
Notice of Motion)

===============================================================
PLAINTIFFS' OPPOSITION TO DEFENDANT TULLY'S MOTION TO STAY/TRANSFER
===============================================================

**WORBY GRONER EDELMAN & NAPOLI BERN, LLP**
*Attorneys for* : Plaintiffs
*Office and Post Office Address, Telephone*
115 Broadway, 12th Floor
New York, New York 10006
(212) 267-3700

===============================================================
To
Attorney(s) for

===============================================================
Service of a copy of the within                                        is hereby admitted.
Dated,
                            _____
                                        Attorney(s) for

===============================================================
PLEASE TAKE NOTICE:
?  NOTICE OF ENTRY
        that the within is a (certified) true copy of a
        duly entered in the office of the clerk of the within named court on                    200__
?  NOTICE OF SETTLEMENT
        that an order                                          of which the within is a true copy
        will be presented for settlement to the HON.                          one of the judges of the
        within named Court, at
        on                    200__                at                    am/pm.

Dated,                                  Yours, etc.
                            WORBY GRONER & NAPOLI BERN, LLP