**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | : Case No.: 21 MC 102 (AKH) |
| | : (all actions identified in the table attached hereto) |
| | : |
| | : |
| THIS DOCUMENT APPLIES TO ALL LOWER MANHATTAN DISASTER SITE LITIGATION | : |
| | : |

**MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK TRUST CORPORATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND DB PRIVATE CLIENTS CORPORATION IN OPPOSITION TO MOTION TO TRANSFER OF DEFENDANTS TULLY CONSTRUCTION CO., INC. AND TULLY INDUSTRIES, INC.**

DAY PITNEY LLP
7 Times Square
New York, New York  10036-7311
(212) 297 5800

Attorneys for Defendants
Deutsche Bank Trust Corporation
Deutsche Bank Trust Company Americas and
DB Private Clients Corporation

1581958A04112607

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 2

PROCEDURAL HISTORY AND STATEMENT OF FACTS ............................................ 4

ARGUMENT .................................................................................................................... 7

    I.      THE NATURE OF A PLAINTIFF'S WORK, NOT THE
           LOCATION OF THE WORK OR TULLY'S STATUS AS
           A DEFENDANT, SHOULD BE THE DETERMINING
           FACTOR IN DECIDING THE DOCKET TO WHICH A
           PLAINTIFF'S CASE IS DESIGNATED ................................................................ 7

    II.     THE RECORD DEMONSTRATES THAT ONLY THE
           ARSENAULT CASE BELONGS IN THE 21 MC 100
           DOCKET ............................................................................................................. 8

           A.     Ninety-Eight Plaintiffs Did Not Work For Tully ........................................ 8

           B.     Over 75% of Plaintiffs Identify Themselves as
                "Cleaners" or "Handlers" ......................................................................... 9

    III.    ANY TRANSFER DECISION SHOULD FOLLOW
           CORE DISCOVERY, WHICH IS ANTICIPATED IN
           THE NEAR FUTURE ........................................................................................ 10

CONCLUSION ............................................................................................................... 10

## PRELIMINARY STATEMENT

Deutsche Bank Trust Company Americas, individually and formerly known as Bankers Trust Company, and also incorrectly pleaded as Deutsche Bank Trust Company; DB Private Clients Corp., formerly known as BT Private Clients Corp.; and Deutsche Bank Trust Corporation, individually, and formerly known as Bankers Trust Corporation and Bankers Trust New York Corporation (collectively, the "Deutsche Bank Defendants") submit this memorandum of law in opposition to the renewed Motion To Transfer ("Renewed Motion") of defendants Tully Construction Co., Inc. and Tully Industries, Inc. (collectively "Tully"), which seeks the transfer of 101 cases from Consolidated Master Docket Number 21 MC 102 ("21 MC 102") to Consolidated Master Docket Number 21 MC 100 ("21 MC 100"), or alternatively, the transfer of all 101 cases to the 21 MC 103 Consolidated Master Docket ("21 MC 103").

This matter was previously presented to the Court by motion of Tully and opposed by the Deutsche Bank Defendants because: (a) the record did not bear out Tully's alleged bases for transfer; and (b) Tully's preference to have its cases removed from the 21 MC 102 docket was not shared by a number of other defendants.  The bases Tully's motion to transfer have not changed.

Tully continues to offer the "World Trade Center Site" definition found in Case Management Order No. 3 ("CMO 3") as the basis for this Court to transfer cases from the 21 MC 102 docket.  However, this Court has repeatedly advised that this definition was not intended to be utilized for any purpose other than construing that order and that it holds no dispositive legal significance in connection with the 21 MC 102 docket. *See* Certification of Marc D. Crowley, Dated November 26, 2007 ("Crowley Cert."), Ex. A, at pp. 6 & 9 (which Order denied Tully's

earlier transfer request without prejudice for renewal). Significant case distinctions can not be drawn upon purely geographic lines.

Tully also submits that the cases it seeks to transfer from the 21 MC 102 docket (the "Motion Cases") are substantially similar to those currently docketed under 21 MC 100, because they involve the Deutsche Bank Building and name Tully as a defendant. However, the information provided in plaintiffs' Check Off Complaints indicates otherwise. Although the Deutsche Bank Building is identified as a work site and Tully is named as a defendant in each of the Renewed Motion cases, only three of the Renewed Motion plaintiffs identify themselves as employees of Tully (or a known Tully subcontractor) and only one of those three (plaintiff Arsenault) provides a work description that suggests work which might involve the City's Department of Design and Construction ("DDC").

The Deutsche Bank Defendants have maintained a simple and consistent position concerning case transfers: Matters involving plaintiffs who actually performed work at the Deutsche Bank Building, for Tully, *in Tully's capacity as the contractor for the DDC*, do not belong in the 21 MC 102 docket with the "clean-up" workers. Accordingly, the Deutsche Bank Defendants agree that the cases of plaintiffs Zablocki and Arsenault belong in the 21 MC 100 docket. However, the current record fails to show that the remainder of Renewed Motion cases involve anything other than "clean up" work, and neither Tully nor the plaintiffs have provided competent evidence to suggest anything to the contrary. Accordingly, the Deutsche Bank Defendants submit that it is premature to make any decision concerning the transfer of these cases from 21 MC 102.[1] The same holds true whether the proposed transfer is to 21 MC 100 or

---

[1] Seventeen of the 101 cases identified in Tully's Renewed Motion are currently listed as consolidated in 21 MC 100, but have not been properly served upon the Deutsche Bank Defendants. The Deutsche Bank Defendants reserve the right to address these matters following proper service. However, consistent with this opposition, it is

21 MC 103 – both require a showing that the plaintiff is claiming injury arising out of DDC work (either in whole or in part).

Core Discovery, which is anticipated for both 21 MC 100 and 21 MC 102 in the near future, should clarify this issue and provide a definitive and rational basis for allocation of cases among the three dockets. There is no evidence that any party will be prejudiced by deferring a decision as to transfer until that discovery is completed. Alternatively, any generic decision to transfer made before that time carries the risk of misinterpretation (as evidenced by the current misunderstanding over the World Trade Center Site definition) and will impose administrative burdens, on both the Court and the parties, which are likely to be repeated if these cases are prematurely transferred to 21 MC 100 (or 21 MC 103, as Tully has alternatively requested).

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On February 7, 2005, this Court entered CMO 3, which defined the "World Trade Center Site" to include, among other locations, the Deutsche Bank Building at Liberty and Greenwich Streets. As stated in CMO 3, this definition was provided "for the sole purpose of construing the provisions of CMO No. 3 and may not be utilized or cited by the parties for any other purpose." (Crowley Cert., Ex. B).

On August 9, 2005, this Court entered an unnumbered Case Management Order in 21 MC 100, which directed that "[c]ases brought by plaintiffs – such as clean-up personnel – alleging personal injury primarily based on circumstances and conduct in the period after the September 11, 2002 attacks, and based on conduct that occurred <u>outside</u> the [CMO 3 "World Trade Center Site" definition] would be designated under 21 MC 102. (Crowley Cert., Ex. C, at

---

their position that any decision concerning transfer must abide further discovery concerning the type of work at issue.

¶3). That order further directed that the 21 MC 102 cases would be coordinated in a separate docket (at least in part) because of "plaintiff's desire to have issues of fact and law unique to these cases supervised on a separate basis." (*Id.*).

On March 28, 2007, this Court entered Case Management Order No. 1 in Master Docket No. 21 MC 103 ("21 MC 103"). (Crowley Cert., Ex. D). By that Order, docket 21 MC 103 was established for plaintiffs claiming injury as a result of work performed both at the World Trade Center Site (as defined in CMO 3) and at other sites. (*Id.*).

On March 21, 2007, this Court entered Case Management Order No. 3 in 21 MC 102. (Crowley Cert., Ex. E). That Order required that each plaintiff file individual check off complaints detailing "specific locations worked." (*Id.*, at ¶4). The deadline for filing such complaints was June 1, 2007. (*Id.* at ¶5). Check-Off complaints, including those which are the subject of Tully's current motion, have since been filed and served. Most of these Check-Off complaints contain abbreviated work histories for each plaintiff, identifying job titles, names of employers, and locations worked. (See Crowley Cert., Ex. F).

More recently, questions have arisen as to the purpose and impact of the CMO 3 "World Trade Center Site" definition, and this Court has reemphasized its position that substantive rights should not be impacted by how the cases are categorized through their designation to the various dockets. (Crowley Cert., Ex. G, at 21:3-7). This Court has also explained that the CMO 3 "World Trade Center Site" definition was a technical one, and the "only definition that was at hand" at the time of the original order. (*Id.*, at 15:16 and 16:11-12). This Court has determined that cases designated to the 21 MC 100 docket should involve claims focused mainly against the City and its contractors because the City's Department of Design and Construction ("DDC") had taken the lead in the work at the World Trade Center. (*Id.*, at 15:17-20). Cases designated to the

21 MC 102 docket should involve private entities other than the City, the DDC, or their contractors. (*Id.*, at 15:21-23).

The issue which is the subject of this motion surfaced more recently in the parties' joint submission to this Court dated August 1, 2007 regarding Tully's request to transfer the Kirk Arsenault case (Civil Action No. 04-cv-5338) from 21 MC 102 to 21 MC 100. (Crowley Cert., Ex. H). The Deutsche Bank Defendants joined Tully's application for transfer because the work performed by plaintiff Arsenault, like that of plaintiff Zablocki, was construction work for a City contractor. (*Id.*, p. 2, fn. 2). However, the Deutsche Bank Defendants did not concede and do not agree that the CMO 3 World Trade Center Site definition was dispositive of the Arsenault transfer application because, "it is the nature of a given plaintiff's work, not just the location, that should dictate whether the case is designated to 21 MC 100 or 21 MC 102." (*Id.*).

On August 2, 2007, Tully filed the Initial Motion which sought, *inter alia,* the transfer of 100 cases from 21 MC 102 to 21 MC 100. All of these 100 plaintiffs are included within the 101 plaintiffs that are the subject of this motion. On September 21, 2007, Your Honor denied the portion of Tully's motion which related to the transfer stating that, "[w]hile further proceedings in cases against Tully arising out of the CMO-3 defined area are stayed, there is no need to create further administrative work for the lawyers or courthouse staff, especially in relation to the uncertain status of the Deutsche Bank Building." (Crowley Cert., Ex. A). Your Honor held that this denial was without prejudice to renewal, stating that "[a] transfer may be appropriate at some later time." *Id.*

## ARGUMENT

I.      **THE NATURE OF A PLAINTIFF'S WORK, NOT THE LOCATION OF THE WORK OR TULLY'S STATUS AS A DEFENDANT, SHOULD BE THE DETERMINING FACTOR IN DECIDING THE DOCKET TO WHICH A PLAINTIFF'S CASE IS DESIGNATED**

Contrary to Tully's suggestion, neither the World Trade Center Site definition found in CMO 3, nor this Court's prior rulings concerning the Zablocki matter, provide clear authority for the presumptive transfer of over 100 cases from the 21 MC 102 docket. The express terms of CMO 3 make clear that the World Trade Center Site definition is not to be used or cited by the parties for any purpose other than construing that particular order. (See Crowley Cert., Ex. B). Likewise, the Zablocki transfer request, which was denied and simply maintained the status quo, was presented and decided without notice to (or opportunity to comment from) defendants.

Although this Court has not ruled as such, the Court's statements at the June 15, 2007 Case Management Conference indicate that the reason for designating certain cases to 21 MC 100 was that those cases *involved DDC work*, and that, at the time CMO 3 was entered, the "World Trade Center Site" definition was simply a technical (and the best available) definition to segregate those cases. (Crowley Cert., Ex. G, at 15:16, 16:11-12, and 15:17-23). The Deutsche Bank Defendants have maintained a position that is consistent with this reasoning. They joined in Tully's prior request to transfer the matter of plaintiff Kirk Arsenault (Civil Action No. 04-cv-5338) from the 21 MC 102 docket to the 21 MC 100 docket and do not oppose the current motion with respect to Mr. Arsenault. Like Mr. Zablocki, Mr. Arsenault alleged that he worked only for a Tully subcontractor, in the Deutsche Bank Building, and at the apparent *direction of the DDC*.

As explained in more detail at Point II below, the critical element of DDC work cannot be presumed simply because work was performed at the Deutsche Bank Building or because Tully has been named as a defendant in a particular case.  In fact, information provided in plaintiffs' Check-Off Complaints contradicts that presumption.  Core discovery, which is anticipated in the near future, should resolve this issue.

## II.   THE RECORD DEMONSTRATES THAT ONLY THE ARSENAULT CASE BELONGS IN THE 21 MC 100 DOCKET

With one exception (Arsenault), the Renewed Motion cases do not allege work/exposure that is substantially similar to that found in the 21 MC 100 docket – i.e., work that apparently involved the DDC.  Looking beyond the mere designation of Tully as a defendant and allegations of work in the Deutsche Bank Building, the vast majority of Check-off complaints fail to identify Tully as plaintiff's employer and none (but for Arsenault) allege work that appears to involve the DDC.

### A.   Ninety-Eight Plaintiffs Did Not Work For Tully

Of the 101 Motion Cases, only three of the plaintiffs, Mr. Arsenault (#8), Mr. Caguana (#14) and Mr. Watson (#98), allege that they performed any work for either Tully or any of the Tully subcontractors previously identified by Tully in the Initial Motion as performing Tully's DDC work.  (See Crowley Cert., Ex. F, at column D).  The other 98 plaintiffs allege work for a variety of other non-Tully employers including:  LVI Environmental Services, Inc., ETS Contracting, Comprehensive Environmental, PAL Environmental Safety, Kiss Construction, Inc., Pinnacle Environmental Corp., Trade Winds Environmental Restoration, Branch, Trio

Asbestos, CES, Galt John Corp., Asbestos Lead and Hazardous Materials Laborers, Safeway Construction, Inc., Safeway Environmental Corp., Fire Department of New York, Local 78, LBI-ABAS CES, PAR Environmental Corp., Nastasi Eurotech, Volunteer, Site Safety, LLC, and Maxon's Restoration, Inc. (*Id.*).

Although requested, to do so, Tully has also failed to provide sufficient information for the Deutsche Bank Defendants to conclude that the plaintiff's alleged injuries arise out of work performed for Tully under the direction of the DDC. Prior to Tully's filing of both the Initial Motion and the Renewed Motion, counsel for the Deutsche Bank Defendants asked Tully's counsel for a list of Tully's subcontractors to evaluate Tully's transfer request. However, as of the date of this opposition, Tully had not provided this information. (Crowley Cert., ¶13).

Since none of these 98 plaintiffs allege work for Tully, Tully's arguments in support of the transfer do not apply and the motion should be denied with respect to plaintiffs #1 to 13, 15 to 97, 99, and 100.

B.    Over 75% of the Plaintiffs Identify Themselves as "Cleaners" or "Handlers"

With the exception of plaintiff Arsenault, the plaintiffs in the Renewed Motion cases do not identify jobs that appear to be directed by the City of New York under the auspices of the DDC. (See Crowley Cert., Ex. F, at column F). Rather, the complaints in the Renewed Motion cases allege a variety of work, including: asbestos handler, handler, cleaner, office cleaner, supervisor, firefighter,[2] volunteer, and safety manager. (*Id.*). In fact, over three quarters of these plaintiffs allege work as asbestos cleaners or handlers, jobs which are readily distinguishable from the nature of the work that was performed by the other plaintiffs in 21 MC 100. These

---

[2] Plaintiff Samuel T. Giamo (#39), who alleged that he was a "Firefighter", is currently consolidated in the 21 MC 100 docket. However, the arguments advanced by Tully do not apply to him since he is not an employee of Tully or its subcontractors.

cases do not belong with those workers whose cases are properly docketed under 21 MC 100 and 21 MC 103.

### III. ANY TRANSFER DECISION SHOULD FOLLOW CORE DISCOVERY, WHICH IS ANTICIPATED IN THE NEAR FUTURE

Tully has declined to provide any information concerning which subcontractors performed work for Tully under the auspices of the DDC, and plaintiff's Check Off complaints fail to clarify this issue. (Crowley Cert., ¶13). Accordingly, the parties must await core discovery, which is anticipated in the near future, to resolve this issue. Without such identification, it is premature to determine which cases fall within the 21 MC 100, 21 MC 102, or 21 MC 103 dockets. There is nothing to indicate that a decision to await such discovery will prejudice any of the parties.

### CONCLUSION

For the foregoing reasons, the Deutsche Bank Defendants respectfully request that this Court grant Tully's motion to transfer the Kirk Arsenault (#8) case and deny Tully's motion to transfer in all remaining respects.

Respectfully submitted,

*/s Benjamin E. Haglund*
Benjamin E. Haglund, Esq.
DAY PITNEY LLP
Attorneys for Defendants
Deutsche Bank Trust Corporation
Deutsche Bank Trust Company Americas and
DB Private Clients Corporation

Dated: November 26, 2007

21 MC 102

In Re World Trade Center Lower Manhattan Disaster Site Litigation

| In Re World Trade Center Lower | Case Number |
|---|---|
| Byron Acosta | 07cv1552 |
| Luis Adriano | 07cv4445 |
| Gladys Agudelo | 07cv4446 |
| Enrique Ali | 07cv1554 |
| Raul Allivar | 05cv9821 |
| Maria E. Alvarez and Carlos Chavarriage | 05cv10135 |
| Jose Alvarracin | 07cv1556 |
| Kirk Arsenault | 04cv5338 |
| Ivan Ascencio | 07cv1460 |
| Marcelo Atiencia | 07cv1562 |
| Peter B Bailon | 07cv5336 |
| Jose Barahona and Domenica Barahona | 07cv5550 |
| Hector Betancourt | 07cv4453 |
| Leopoldo Burgos | 07cv1473 |
| Manuel Caguana and Antonia Caguana | 06cv11968 |
| Ivan Calero and Reyna Calero | 07cv1575 |
| Wilson Calle | 07cv1578 |
| Rey R. Campoverde | 07cv5280 |
| Rodrigo Campozano | 07cv4459 |
| Edison Cardenas | 07cv1580 |
| Silvia Castillo and Segundo Castillo | 05cv1718 |
| Nancy Chuva | 07cv1589 |
| Yolanda Cintron | 06cv5631 |
| Jorge E Cortez | 07cv5394 |
| Lidia Cortijo | 07cv317 |
| Nancy Criollo and Lawrence Zenteino | 07cv4462 |
| Clara Dota | 07cv1602 |
| Jesse Drake and Susan Drake | 07cv5353 |
| Stanislaw Drozdz and Monika Drozdz | 06cv14620 |
| Inerva Duarte | 07cv1603 |
| Elvia Dutan and Wilfredo Dutan | 07cvl606 |
| Jorge Encalada | 07cvl607 |
| Luis Franco | 07cv4466 |
| Janina Frelas | 07cv1612 |
| Norberto Gallardo | 07cv5290 |
| Viviana Garcia | 07cv1617 |
| Peter Gaspar | 05cv10739 |
| Leonard Gawin and Miroslawa Gawin | 07cv1619 |
| Samuel T. Giamo and Rosemary Giamo | 06cv11676 |
| Hitien E Giraldo | 07cv5554 |
| Rosa Gualpa | 07cv4472 |
| Armando Guzman | 07cv5556 |
| Avenia Hernando and Nidia Hernando | 07cv4473 |
| Julio Hurtado and Elda Monica Hurtado | 07cv5295 |
| Manuel Idrovo | 07cv1628 |
| Edgar Idrovo | 07cv1627 |
| Jorge Inga | 07cv1629 |
| Jozef Jablonski and Agnieszka Jablonska | 07cv1630 |
| Jonas Jaramillo and Blanca Romelo | 06cv14746 |

| Plaintiff | Case Number |
|---|---|
| Marian Karus and Barbara Karus | 07cv1635 |
| Edward Kosowski | 07cv5299 |
| Ana Lascano | 05cv9333 |
| Andrzej Lasica and Ewelina Lasica | 07cv4480 |
| Carlos Lenis and Lucia Lenis | 06cv10045 |
| Ines Leon and Luis E. Quezada | 07cv4481 |
| Cesar Leon and Agnes Dipini | 07cv63 |
| Wilmo Loja | 07cv4482 |
| Fernando Lucero | 07cv5366 |
| Rosa Medina | 07cv4491 |
| Maria E. Melendez | 07cv5397 |
| Juan Mendez and Kareen Mendez | 07cv1664 |
| Carlos Merchan and Martha Merchan | 07cv1665 |
| Eugenic Mora and Olga Mora | 06cv13168 |
| Tatiana Morales and James Fink | 07cv5370 |
| Sandra Moreno | 07cv1670 |
| Luis Naranjo and Rosa Naranjo | 05cv10738 |
| Walter Naranjo and Miriam Naranjo | 07cv4496 |
| Oscar Negrete | 07cv5371 |
| Sean O'Connell and Carole O'Connell | 07cv5374 |
| Rosa Palaguachi and Rigoberto Palaguachi | 07cv1680 |
| David Reynolds and Katherine Reynolds | 07cv3446 |
| Marcel Rhoden and Deirdre L. Worley | 07cv5311 |
| Maximo Riera and Fanny Riera | 07cv1519 |
| Patricio Rodas and Taina Ruiz | 07cv1694 |
| Jaime Rojas and Johanna Hernandez | 07cv4511 |
| Mieczyslaw Romaniuk | 07cv5316 |
| Victor Salazar | 07cv4512 |
| Rosa Sanchez and Hector Albarracih | 06cv12488 |
| Edilberto Sanchez | 07cv5384 |
| Emanuel Santamaria | 07cv1528 |
| Gala Sarmiento | 07cv1529 |
| Edwin Sarmiento and Nora Sarmiento | 07cv4515 |
| Teresa Serrano | 05cv8937 |
| Raul Siguencia | 07cv1533 |
| Felipe Suarez | 07cv1707 |
| Samuel Sumba and Mercedes Sumba | 07cv1710 |
| Pedro Tamayo and Gabriella Tamayo | 07cv1538 |
| Nicholas Teham | 07cv5564 |
| Julia Tenezaca | 07cv1714 |
| Cesareo Teran | 07cv5389 |
| Jeanne Thorpe | 07cv1715 |
| Carlos A. Valencia and Gloria N. Bonilla | 07cv5324 |
| Rommel Vasquez and Rosa A. Gomez | 07cv1543 |
| Kattia Vazquez and Peter Vazquez | 07cv1722 |
| Severo Vega and Lila Gonzalez | 07cv4521 |
| Segundo Villarroel and Martha L. Villarroel | 07cv1546 |
| Kleber Villarruel | 06cv13703 |
| Kevin Walsh | 06cv12608 |
| Robert Waniurski and Ewa Waniurski | 07cv4524 |
| Ancil Watson | 07cv5391 |
| Clarence Wragg and Cecilia Wragg | 06cv8125 |